Good morning, your honors, and may it please the court, Elizabeth Newman, representing the appellant in this case, Mr. Urena. And your honors, I'd like to begin with the confrontation clause argument and the evidence that Dr. David was precluded from presenting to the jury about the wound on Gary Dennis' right eyebrow. Excuse me. Let me ask you a question. Usually in a district court proceeding, at some point there's an order, a final pretrial, where you say who your experts are. Was there any of that here? I believe that there was a pretrial conference, your honor. I don't believe that the defense did designate Dr. David as its expert. Nor did the government. Nor did the government. It's true. But had the district court permitted the defense to designate Dr. David as its expert, there would have been no prejudice to the government since he was a government witness. There wasn't any surprise about his testimony, was there? No, there wasn't any surprise about his testimony, and that's why the government would not have suffered any prejudice. The government had submitted to the defense the report of Dr. David's on which the defense, that contained the information that the defense wanted to elicit approximately one week before trial. It was, I think, the Wednesday before the Tuesday of trial. And the evidence that Dr. David was going to be able to tell the jury was crucial to support the defense argument for acquittal on count two, which was possession of the shank. And it was crucial to support the defense argument for conviction on count one, not only of the lesser included of simple assault on which the jury was instructed. Without Dr. David, the defense only had Lieutenant Torex's momentary glance as he launched himself at Atwater, a momentary glance that told him that Atwater had the shank and that Mr. Urena was using a closed fist. Was the video going to support that? I think you can argue either way from the video, Your Honor. I'm sure that the court, as both counsel have, and God knows as the jury did, if the court has read the record of the trial, has seen the video from all four angles, frame by frame. And I would submit that it's not possible to say, based on the video, exactly who was using what, or where the shank originated. Or who was the aggressor? Or who was the aggressor. No, really, depending on where you begin the context of this conflict. But certainly as to the one or two minutes of actual physical tussle that the video captured, it's not possible to say really who was using what. You see a lot of flailing. But most of it is between two tables, as I'm sure the court's aware. So without Dr. DeVete's testimony, the defense really only had a momentary glance of Lt. Torex, which was counterbalanced by the government rebuttal witness, Officer or Mr. Lanklos, and a rather multi-step argument about why Mr. Urena's oral and written statement, presented through Agent Sloan, should be disregarded. And it didn't have other support. But Dr. DeVete could have provided the most impactful testimony about the origins of the wound on the side of Gary Dennis's body that Mr. Urena was facing. And without him, the defense could only argue inferences. And asking a jury to believe a defense argument in closing is really different from reminding a jury what it itself has heard a witness say, a witness who has testified for the government, as well as either on cross or as a designated expert for the defense. Now, what's our standard here? Your Honor, I would argue that the standard is, excuse me, is de novo. Why? Because there are three arguments, Your Honor. One is based on evidentiary rules, one is based on policy, and one is based on the case law. Now, the evidentiary rule is Rule of Evidence 103, which just says that in order to preserve an issue, you just have to object to it. You don't have to utter special magic words. The policy argument is that when you're precluding the defense from presenting a whole area of evidence, what you're doing goes obviously to the defendant's right to a jury trial, to a trial to present a defense, and his right to confrontation and cross-examination. And the argument based on the case law, Your Honor, is that the cases that we cited, Cardenas and Larson, Larson being a case decided on Bonk, in those cases, there was no indication that the defendant had been required to say any magic words about confrontation clause, at least as far as I remember those cases. And in the government's cases, which it cited to the contrary, as I read those cases, there's no indication that the defendant made any objection on any ground to the evidence that was later objected to on appeal as violating his rights under the confrontation clause. And so naturally, that evidence or that issue would be reviewed by this court under a plain error standard. Counsel, it's Judge Gould, if I could ask you a question. Am I right that this doctor gave some testimony and the defendant wanted to cross-examine beyond the scope of the direct because they wanted to get into what was in his report about the cause of the injury above the eye, and the court would not permit the further cross beyond the scope of the direct? That's true, Your Honor. The court would not permit it. Okay, so isn't that traditionally, I mean you've made a spirited argument for de novo review, but isn't that traditionally an issue that's reviewed for abuse of discretion, whether a trial court is going to permit for cross beyond the scope of the direct? I think that is reviewed traditionally de novo, Your Honor, but there's an additional twist in this case, which is that Traditionally de novo? I'm sorry, traditionally for abuse of discretion. The court's correct about that. I would argue that under an abuse of discretion standard, the district court abused its discretion, and I would argue that even if the standard's plain error, the error was plain and affected Mr. Urena's substantial rights under the same sort of analysis that the court would engage in to see if the error was harmless or not. But there was an additional twist in this case beyond the defense wishing to cross-examine Dr. Daveed to elicit this information, and that is that the defense offered to designate him as an expert, which means that it would call Dr. Daveed as a witness in its own case. I'm sorry. Okay. No, I understand that. But they offered to do that like in the middle of the trial after he testified. It was before he did. They did not ask for that in the pretrial conference. They did not ask for that in the pretrial conference, Your Honor. They asked for that. Then why isn't it traditionally viewed as an issue of abuse of discretion whether a trial court will let a party belatedly designate an expert? I guess the court could see it that way, Your Honor. As the court is aware, I've argued for a de novo standard, but I think that under an abuse of discretion standard, the court should still reverse and remand. And so if the court is of the view that the standard of review is more properly abuse of discretion, I would certainly submit on that because I think that either way, the district court's ruling was an abuse of discretion, and it affected the case in a very serious way. The government's evidence was not overwhelming. The defense had an eyewitness. The government had an eyewitness who had a more obstructed view of what had occurred. But both of them were eyewitnesses. Here you had a doctor who was not a partisan, who had, you know, no brief really for either side, who would have been able to say, in my view, this injury was caused more likely by a punch to the face or a fall to the floor than by a stab from a shank. And that was really significant evidence when you look at how Mr. Orena and Gary Dennis fell to the floor. And Mr. Orena's just squashed underneath him face to face. One witness said he could see his little feet wriggling. I mean, you get the sense of an elephant squashing a mouse. And the only thing that the only area of Dennis's body would have been the front of his body that was available to Mr. Orena to touch in any way. Right. You've used your time.  Thank you, Your Honor. Thank you. Thank you, Your Honor. Thank you. Good morning to the court. Harvinder Anand for the United States. May it please the court. I'll start with the Confrontation Clause issue as well, Your Honors. The court is correct that the abuse of discretion standard is the correct standard of review here. The court said so in Red Lightning and in Finley. Both of those are cases in which the district court's ruling on the admission of expert testimony was reviewed. And it was both cases that were reviewed for abuse of discretion. Also, because the defendant never raised the Confrontation Clause issue in the district court, plain error applies. In Puckett, the Supreme Court recently emphasized, Your Honors, that there is a contemporaneous objection rule. And what that rule says is that you are a defendant or a litigant is to notify the court of the party's position and the reason for the party's position and what action the party wants the court to take. In this case, the only objection, the only argument that was raised in the district court was that defense counsel said because of the timing of the report that the defense should be entitled to get into it. The district court quite properly responded that, well, regardless of the timing of the report, there were lengthy pretrial proceedings here. The defense had an opportunity to designate an expert. If this was such a crucial issue for the defense, the defense should have designated an expert. And, in fact, if it were so crucial, the defense would have designated an expert on this issue. The sequence of events was that the defense designated another expert. The defense, the main defense really in the case was that it was a self-defense argument. And the other argument was that, to the jury, was don't believe the defendant's confession because it's not reliable. And the defense designated an expert that they wanted to opine on the credibility of the defendant's confession. We argued that. There was actually a briefing on that issue. The government argued that that was an improper, that was improper expert testimony. But that's what the defense was. And in the course of pretrial interviews, just at the last, a week before trial, what popped up unsolicited really from the doctor was this opinion. And it was disclosed to the defense. And the defense never, even at that late stage, designated an expert. In fact, the defense did designate the other expert. And the government was complaining to the defense that that designation was late. And then this report was produced approximately a week before trial. And the defense never came forward. It was on the day before, the first day of trial, which was a Tuesday, March 3rd. It was during the pretrial proceedings that morning that defense counsel raised the possibility of getting into the doctor's, Dr. Davids' report. And then the next morning, that was the first really notice to the government that the defense was thinking about this. The next morning, the government moved to preclude the testimony. And the government submits that the district court, Judge Phillips, quite reasonably concluded that because there had been no designation and because this was clearly beyond the scope of what the government was seeking to elicit, that the testimony was not to be admitted. Well, if it was in the report, and it relates to the question of causation, and the defendant on seeing the report thinks that it will be able to cross-examine the doctor on what's in the report and the issue of causation, then because the government carefully limits the direct testimony so that it doesn't get into anything in the report that might benefit the defense, why isn't it fair to let the defendant either cross-examine, or if the district court says, well, this is outside the scope of direct, you can't cross-examine, it's a different subject, then to designate the witness. Why isn't that fair? It wasn't fair under those circumstances, Your Honor, because first of all, as I said, the defense had designated another expert, and the parties were litigating the timeliness of disclosures, expert disclosures. We were litigating that right around the same time. The defense's failure to designate that expert was prejudicial to the government because we weren't on notice that the defense intended to use that, what we contend is expert testimony, and in essence, it would have put the government in the position of then having mid-trial to go seek out the possibility of getting, calling a rebuttal expert. So that was the case. Well, I don't, that seems peripheral. I mean, so they did not put on that expert? They wound up not calling the expert that they designated for other reasons. Why couldn't they cross-examine your expert with respect to the matters that were favorable to the defense? It just seems odd. Your Honor, so the doctor, when we called the doctor, that was recipient testimony. We did not designate him as an expert, and so the testimony the government elicited was not expert testimony. The reason why the government felt it was unfair was because of the lack of notice, even though it was a witness that the government was calling. But you had the report. We had the report, Your Honor. And they had the report. Yes, Your Honor. But there's really nothing in the record that establishes that Dr. David's opinion was based on anything, that it was reasonable, that it was based on anything other than speculation. There was just no basis to establish that it was reasonable and supported by the evidence. And as I said, it came up really at the last second during a pretrial interview, which was an opinion offered up by Dr. David unsolicited, and given those circumstances. It's not in the report? I'm sorry, Your Honor. It's not in the report? No. Well, he had never raised it before. Dr. David had been interviewed previously. He had never raised this issue before, and the government didn't designate Dr. David as an expert. We were not planning to get into causation at all, and unsolicited, he offered up an opinion, and it really just came out of left field. It was really not based on anything. And under those circumstances, the government expected that if the defense wanted to get into it, that it would designate an expert. And from the government's perspective, it was important because we were at that very time litigating the timeliness of defense expert disclosures. And so the defense was unnoticed that this was something that was important to the government, and the defense just didn't designate it. And they also had another expert, so it wasn't like they weren't thinking about expert witnesses. Absolutely right. And so that was really the prejudice to the government. But, you know, I want to address the other issue, which is that to the extent if the court were to find that there was some error here, the defendant has not established, as is his burden, that the error was prejudicial because in the government's brief at pages 55 to 58, I've gone through and summarized the evidence, and it shows very clearly that this was really inconsequential. And, in fact, the notion that Mr. Atwater would have had a knife was contrary to all the evidence. You begin with the defendant's own statement in which he twice mentions holding a shank and having a shank. I've submitted to the court a video of the attack. I've urged the court to look at it if it hasn't already done so. And on the video, the defendant quite clearly makes a rotating hand motion, which shows that he is arming himself with something. And then the defense just alluded to this being an elephant squashing a mouse. Well, it was the mouse who was attacking the elephant, and the only way that happened was it was because the mouse had a knife. And then when you look at what Atwater does when he gets to the scene, it's quite telling because he starts by kicking Mr. Urena, I'm sorry, Mr. Dennis. He starts by kicking, which leads to the very reasonable conclusion that he didn't have a knife, because if he did, he would have immediately started to use the knife. And then beyond that, if you look at the video frame by frame, you'll see that Atwater lands 14 blows on Dennis' back and on his left shoulder area, and there is a single stab wound in that area. There's no way if Atwater had a knife and he struck Dennis 14 times in that area, he would have had only a single stab wound in that part of his body. And then, by the way, the shank is then recovered under Mr. Urena. So the evidence in the government's view was overwhelming. There's absolutely nothing to suggest that Atwater had a knife, except for the defense argument, which was just merely speculation. Unless Your Honor has any questions, I'll submit. I have no questions. Thank you, Your Honor. Thank you. Are there any questions of the Appellant's counsel? Thank you. The case just argued is submitted for decision. We'll hear the next case, which is United States v. Bautista Castro Cabrera.
judges: McCuskey, Schroeder, Gould